IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JAMES WASHINGTON,

                Plaintiff,

v.

RENEE SCHUELER, TRISHA
ANDERSON and JAMIE GOHDE,

                Defendants.

OPINION AND ORDER

18-cv-208-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff James Washington is incarcerated at the Columbia Correctional Institution. He is proceeding on the following claims under the Eighth Amendment and state negligence law: (1) defendant Trisha Anderson failed to order Nike athletic shoes that had been recommended by plaintiff's podiatrist and later told plaintiff that he would have to make do with prison-issued shoes in which his orthotics did not fit; and (2) defendants Renee Schueler (in both her individual and official capacities) and Jamie Gohde failed to address three health services unit policies that affected plaintiff's ability to get appropriate foot care. (I have amended the caption to reflect defendants' full names and the correct spelling of their names. As noted below, Cindy Buchanan replaced Schueler as the health services unit manager in December 2018 and would be the appropriate defendant for purposes of injunctive relief. However, it is not necessary to revise the caption to reflect the proper defendant for plaintiff's official capacity claim because plaintiff has not shown that he is entitled to such relief.)

1

Before the court is defendants' motion for summary judgment. Dkt. #22. Plaintiff also has filed a motion to strike the declarations submitted by defendants in support of their motion, dkt. ##27-29, on the grounds that they are not signed and contain factual errors. Dkt. #42. For the reasons below, I am denying plaintiff's motion to strike and granting defendants' motion for summary judgment with respect to plaintiff's Eighth Amendment claims. Plaintiff's state law claim against Schueler must be dismissed because he failed to comply with the notice of claim requirements under Wis. Stat. § 893.82 with respect to that claim. Finally, I decline to exercise supplemental jurisdiction over plaintiff's negligence claims against defendants Anderson and Gohde and will dismiss those claims without prejudice so that plaintiff can refile them in state court if he chooses to do so.

From the parties' proposed findings of fact, I find the following facts to be undisputed unless otherwise noted.

UNDISPUTED FACTS

A. The Parties

Plaintiff James Washington has been incarcerated at the Columbia Correctional Institution in Portage, Wisconsin since January 5, 2016. All of the defendants worked at Columbia during the events at issue in this case. Defendant Renee Schueler worked as a nurse and the health services manager from August 21, 2017 to August 21, 2018; defendant Jamie Gohde was the health services manager from July 25, 2016 until May 15, 2017; and defendant Trisha Anderson was a nurse clinician 2 from September 26, 2011 to January 21,

2

2018. Cindy Buchanan became the health services manager at Columbia on December 10, 2018.

(Plaintiff proposes several facts related to the alleged reasons defendants left Columbia. Dkt. #35 at ¶¶ 1-2, 6, 8. However, I have not considered them because the only evidence that plaintiff proposes in support of these facts is his own unsupported opinion that defendants Schueler and Gohde were incompetent managers and that defendant Anderson had become "disillusioned with the health services unit" because security staff were injecting themselves into decisions about shoes. In addition, these facts are not material to plaintiff's claims in this case.)

B. Prison Practices and Policies Regarding Shoes and Podiatry Appointments

Inmates at Columbia are given one pair of state-issued shoes. Inmates may buy up to two pairs of personal shoes from an approved vendor catalog that contains shoes and other gear that have been reviewed and pre-approved for use in a maximum-security prison. The catalog includes shoes that are commonly worn by inmates to accommodate an orthotics device or insole, but it does not offer shoes that cost more than $75 because valuable property presents a risk of theft and other disruptive behavior in prison. (Plaintiff unsuccessfully attempts to dispute defendants' stated reason for the $75 limit. The only evidence he cites in support of his contention is his own unsupported opinion that former Governor Tommy Thompson had declared that it was wrong to allow prisoners to walk

around in $300 to $400 shoes.) An inmate may request alternative shoes if he believes that he needs them for a medical condition.

Requests for alternative shoes are reviewed by a special needs committee, which is a multi-disciplinary committee made up of medical, security and other staff. If necessary, the medical staff member on the committee independently reviews the inmate's medical records to offer medical expertise on the inmate's particular request. If an inmate has a legitimate medical condition affecting the shoes he can wear, the special needs committee may authorize an alternative pair of state-issued shoes at no cost to the inmate. At the time relevant to this case, the alternative shoe was known as the "Apex shoe." The committee also may authorize an inmate to order shoes from outside the approved vendor catalog, and it may authorize an inmate to order shoes that exceed the $75 limit.

There is no policy or practice limiting the number of podiatry appointments an inmate may have. There also is no policy or practice requiring inmates to wait months to schedule podiatry appointments. Rather, health services unit staff schedules offsite consultations for inmate patients when ordered to do so by Department of Corrections providers and such consultations are subject to the offsite providers' availability.

C. Plaintiff's Shoes and Foot Problems

Plaintiff has a history of foot problems for which he has ordered and received several pairs of personal shoes in 2016 and 2017: white Adidas brand shoes in April 2016; black and white Nike shoes in October 2016; white, black and grey Nike shoes on January 11,

4

2017; black, grey and white Nike shoes on June 23, 2017; and black and white Nike shoes on August 30, 2017. (Neither side has proposed any findings of fact explaining how plaintiff was able to order those shoes or whether the special needs committee approved them.)

On January 9, 2017, plaintiff was referred to an off-site podiatry clinic to be evaluated for bilateral bunions with inflammation and bilateral hammertoes. The podiatrist recommended several things, including that plaintiff wear custom-made orthotics or insoles in his shoes, use toe foam and order new extra-wide athletic shoes, such as New Balance shoes, from an outside vendor. Dkt. #36-1 at 11. On January 27, defendant Anderson entered a note in plaintiff's prison medical record, stating that he was allowed to wear personal shoes at all times until he received Apex shoes, but she did not refer to the January 9 recommendation.

The podiatrist recommendation from January 9, 2017 was either misplaced or overlooked by health services staff at Columbia because plaintiff was not provided orthotics or toe foam. Dkt. #36-1 at 22. On January 30, plaintiff returned to the podiatrist, who again recommended that plaintiff wear insoles and athletic shoes, but specified that he was recommending a Nike athletic shoe for plaintiff. Id. at 21-22. (At that time, plaintiff already had received a pair of Nike athletic shoes on two occasions: in October 2016 and on January 11, 2017.)

On January 31, 2017, Nurse Anderson entered the podiatrist's recommendations from January 9 and January 30 in the "Prescriber's Orders" section of plaintiff's chart, stating that the podiatrist had recommended "athletic style shoes." Anderson did not note

5

that the podiatrist had mentioned New Balance or Nike brand shoes. It is standard practice for nursing staff to transcribe such recommendations in a patient's chart and then flag the chart for the physician at the prison. The physician, not nursing staff, determines the course of treatment. The offsite provider's recommendation is merely a recommendation. Dr. Syed (not a defendant) signed off on the podiatrist recommendations noted by Nurse Anderson in plaintiff's record. Several months later, in April 2017, the podiatrist wrote the health services unit to clarify that he was recommending that plaintiff be allowed to order a "quality leather stiff-soled accommodative athletic shoe from any outside vendor deemed appropriate and also that the allowed dollar amount for the shoes exceed $75 if necessary." Dkt. #36-1 at 23.

Around July 4, 2017, the health services unit misplaced plaintiff's insoles, so plaintiff was sent back to the podiatrist. On August 8, 2017, the podiatrist again recommended insoles and a stiff-soled shoe such as New Balance from an outside vendor that exceeded the $75 limit. The recommendation was immediately referred by Dr. Syed to the special needs committee, and Nurse Anderson noted the order and referral in plaintiff's records.

On August 11, 2017, Anderson entered a follow-up note in plaintiff's records, stating that the special needs committee had determined the recommended New Balance shoes were not medically necessary because the shoes provided by the institution met plaintiff's needs. It is not clear whether Anderson was actually on the special needs committee that made this determination. (There also is no evidence that either defendant Schueler or Gohde served

6

on the committee.)  In Nurse Anderson's opinion, the "Propet" and "Apex" shoes offered through the approved vendor catalog are both appropriate for accommodating insoles.

Plaintiff received a pair of Apex shoes on September 8, 2017 from a health services unit staff member who is not one of the defendants.  On October 12, 2017, Nurse Anderson told plaintiff that he would "just have to learn to endure the pain" in his feet, back and hips.

Plaintiff filed a notice of claim pursuant to Wis. Stat. § 893.82, but he did not name Schueler in his notice.

OPINION

A.  Motion to Strike

A month after the parties completed the briefing on defendants' motion for summary judgment, plaintiff moved to strike the declarations submitted by each of the defendants because they are signed electronically with "/s," not personally by the defendants.  However, Federal Rule of Civil Procedure 5(d) specifically provides that "[a] person represented by an attorney must file electronically" and "[a] filing made through a person's electronic-filing account and authorized by that person, together with that person's name on a signature block, constitutes the person's signature."  In this case, all of the defendants are represented by a lawyer, Samuel Berg, who electronically filed the declarations on defendants' behalf. In addition, all of defendants' declarations comply with section III.E of this Court's Electronic Filing Procedures (available online at www.wiwd.uscourts.gov/electronic-filing-procedures), which provides that "[a] Filing User's

7

login and password serves as the Filing User's signature on electronically filed documents for all purposes" and "must include an s/ and the complete name of the signing party."

Plaintiff also takes issue with several statements that defendants make in their declarations, arguing either that they cannot be true or that other evidence contradicts the truth of the statement. However, there is no evidence that any of the defendants submitted their declarations in bad faith or are not competent to testify on the matters stated within them. Fed. R. Civ. P. 56(c)(4) and (h) (setting forth rules with respect to affidavits or declarations submitted in support of motions for summary judgment). The arguments that plaintiff makes should have been raised in his response to defendants' motion for summary judgment and supported with evidence of his own. Although plaintiff questions how Nurse Anderson would know certain information about the Apex or Propet shoes offered in the prison's catalog, I can infer from Anderson's declaration that she is familiar with the shoes in light of her position as a nurse at the prison and that she is stating her professional opinion about how the shoes function. Accordingly, plaintiff has failed to show that there is any reason to strike defendants' declarations on the grounds that they contain obviously false information or are not based on personal knowledge.

B. <u>Eighth Amendment</u>

The Eighth Amendment imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to insure that inmates receive adequate medical care. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994). A prison official's "deliberate

indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. Id. at 828; Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). To survive summary judgment, plaintiff must present evidence suggesting that he suffered from an objectively serious medical condition and that defendants knew about the condition but disregarded it. Farmer, 511 U.S. at 834; Perez v. Fenoglio, 792 F.3d 768, 777 (7th Cir. 2015).

The Court of Appeals for the Seventh Circuit has made it clear that at summary judgment, "[c]onclusory allegations that have no factual support are insufficient to create a genuine issue of material fact." Powers v. Dole, 782 F.2d 689, 695 (7th Cir. 1986). Therefore, to prevail on his claims, plaintiff must present specific evidence showing that defendants knowingly disregarded "an excessive risk to [his] health or safety." Gevas v. McLaughlin, 798 F.3d 475, 480 (7th Cir. 2015) (quoting Farmer, 511 U.S. at 837). See also Snipes v. Detella, 95 F.3d 586, 590 (7th Cir. 1996) ("[T]he official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."). It is not enough for plaintiff to show that he disagrees with defendants' conclusions about the appropriate treatment, Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010), that other medical providers reached a different conclusion about what treatment to provide plaintiff, Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014), or that defendants could have provided better treatment. Lee v. Young, 533 F.3d 505, 511-12 (7th Cir. 2008). Even a showing of error, negligence or medical malpractice is not enough to prevail on a claim under the Eighth Amendment. Norfleet v.

9

Webster, 439 F.3d 392, 396 (7th Cir. 2006); Vance v. Peters, 97 F.3d 987, 992 (7th Cir. 1996). Rather, plaintiff must show that any medical judgment by defendants was "so significant a departure from accepted professional standards or practices that it calls into question whether the [provider] actually was exercising his professional judgment." Pyles, 771 F.3d at 409.

Defendants do not dispute that plaintiff's foot problems and pain present serious medical needs, so the question is whether any of the defendants acted with deliberate indifference to those needs. I will discuss plaintiff's claims against the individual defendants separately below.

1. Defendant Anderson

Plaintiff is proceeding on claims that defendant Anderson (1) failed to include the specific brand of shoes that the podiatrist recommended in the order she entered on January 31, 2017, and (2) told plaintiff on September 8, 2017 that he would have to "make do" with prison-issued Apex shoes even though plaintiff demonstrated that his orthotics did not fit in those shoes.

   a. Recording error

It is undisputed that Nurse Anderson (1) failed to record the January 9, 2017 podiatrist recommendation until January 31, which seems to have delayed plaintiff's receipt of his insoles and special shoes by 23 days; and (2) did not include the podiatrist's

recommendation for a specific brand of shoes in the January 31 recommendation. (Although plaintiff also accuses Anderson of not properly "overseeing" the "chain of medical treatment custody" of his insoles, he was not granted leave to proceed on such a claim.) However, at most, Anderson seems to have made a mistake or an error in judgment.

Plaintiff has not presented any evidence suggesting that Anderson intended to harm him or that she knew that plaintiff's condition was so severe that not recording the podiatrist's orders for 23 days or summarily referring to Nike and New Balance shoes as "athletic style shoes" posed an excessive risk of harm by unnecessarily prolonging plaintiff's pain or exacerbating his injury. McGowan v. Hulick, 612 F.3d 636, 640 (7th Cir. 2010) (to support deliberate indifference claim, delay in treatment must exacerbate injury or unnecessarily prolong pain and depends on seriousness of condition and ease of providing treatment). Although plaintiff makes general statements in his brief and affidavit that Anderson's recording error delayed the issuance of his orthotics and shoes by a few weeks (January 9 to 30, 2017), during which he had foot pain, he has not come forward with any evidence that his chronic condition was actually worsened because of Anderson's oversight. Williams v. Liefer, 491 F.3d 710, 714-15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm."). In addition, it is undisputed that plaintiff received some sort of Nike shoes on January 11, 2017. Although I can infer from some of plaintiff's filings that he believes that those shoes also did not comply with the podiatrist's

11

recommendation, he has not proposed any findings of fact to support that contention or explained his reasoning. Finally, there is no evidence that the special needs committee would have issued a different decision with respect to plaintiff's shoes had Anderson correctly identified the podiatrist-recommended shoes as Nike or New Balance rather than "athletic style" shoes. In fact, in his revised April 2017 recommendation, the podiatrist referred to quality, stiff-soled "athletic shoes."

b. September statement

In his brief in response to defendants' motion for summary judgment, plaintiff explains that a Columbia health services unit staff member, and not Anderson in particular, made the September 8th statement. Dkt. #34 at 9. Plaintiff says that he believes that this unknown staff member spoke with Nurse Anderson about plaintiff's concerns about the Apex shoes and that plaintiff later complained to Anderson about the shoes causing him pain but she dismissed his concerns. Plaintiff has failed to propose findings of fact citing to admissible evidence in support of most of these contentions. However, even if I assume that Anderson knew about plaintiff's concerns with the Apex shoes, plaintiff has failed to present any evidence from which a reasonable jury could conclude that Anderson had the authority to challenge or influence the special needs committee's decision to provide him Apex shoes rather than Nike or New Balance brand shoes that exceeded the $75 shoe limit. Plaintiff contends in his brief that Anderson was "in charge" of the "orthotics division" of the health services unit, but he has not presented any admissible evidence to support that contention

12

or show that she had any authority or role in ordering plaintiff's shoes. Accordingly, defendant Anderson is entitled to summary judgment with respect to this claim.

2. Defendants Schueler and Gohde

Plaintiff contends that defendants Schueler and Gohde were aware of the following health services department practices that deprived him of adequate medical care: (1) carrying out the orders of the security department and not allowing inmates to purchase shoes from outside vendors, even if those shoes have been prescribed as medical treatment; (2) limiting the number of podiatry appointments an inmate may have; and (3) waiting several months to schedule podiatry appointments. (Plaintiff also devotes several pages in his brief in response to defendants' motion for summary judgment to arguments about how the health services unit lacks a "meaningful tracking system" with respect to insoles, which resulted in the loss of his custom-made insoles on two different occasions. However, I have not considered those arguments because plaintiff was not allowed to proceed on a claim with respect to the loss of his insoles.)

A supervisor can be liable under the Eighth Amendment for "personally devis[ing] a deliberately indifferent policy that caused a constitutional injury," Armstrong v. Squadrito, 152 F.3d 564, 581 (7th Cir. 1998), or for "facilitat[ing]" or "turn[ing] a blind eye" toward the problem, Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). To hold Schueler and Gohde individually liable, plaintiff must show how they were personally involved in depriving or delaying plaintiff necessary treatment or otherwise disregarding an excessive risk

to his health or safety. Kuhn v. Goodlow, 678 F.3d 552, 555-56 (7th Cir. 2012). To prevail on his official-capacity claim for injunctive relief against Schueler, which is considered a claim against the state itself, Fritz v. Evers, 907 F.3d 531, 533 (7th Cir. 2018) ("[S]tate official in his official capacity is the state."), plaintiff must show that a policy or custom of the state played a part in the alleged constitutional deprivation. Kentucky v. Graham, 473 U.S. 159, 166 (1985); Fields v. DeYoung, No. 16-cv-405-jdp, 2018 WL 5995487, at *7 (W.D. Wis. Nov. 15, 2018), appeal dismissed, No. 19-1245, 2019 WL 3763950 (7th Cir. Mar. 20, 2019).

As an initial matter, plaintiff has failed to present any evidence from which a reasonable jury could conclude that the health services unit had any policy or practice regarding the scheduling of outside podiatry appointments that deprived him of treatment, delayed him treatment or otherwise disregarded an excessive risk to his health or safety. Although plaintiff's complaint included several allegations regarding his podiatry appointments, he did not propose any factual findings related to them or otherwise develop an argument in his summary judgment response with respect to the alleged practice of delaying or limiting outside podiatry consultations. In fact, the undisputed facts show that there was no policy or practice limiting the number of podiatry appointments an inmate was allowed or requiring inmates to wait months to schedule podiatry appointments. Rather, it is undisputed that health service staff schedule offsite consultations for inmate patients subject to the offsite providers' availability, over which health service staff have no control. Accordingly, plaintiff has failed to show that he could succeed at trial on either an official

capacity claim against Schueler regarding the practice of scheduling outside podiatry appointments or an individual capacity claim against Schueler and Gohde for helping to perpetuate such a practice. Defendants Schueler and Gohde are entitled to summary judgment as to this claim.

With respect to the approval process for shoes, plaintiff alleges that Schueler and Gohde allowed non-medical personnel to thwart the treatment recommendations of doctors by preventing inmates from receiving outside shoes exceeding the $75 limit that have been specifically recommended by a physician. However, as this court has stated in similar lawsuits, "[t]here is nothing inherently unconstitutional about allowing security staff to have input about the distribution of [certain] items," "even if the policy serves to steer medical personnel away from prescribing certain types of treatment where others are also available." Fields, 2018 WL 5995487, at *8 (discussing rejection of shoes from outside vendors). See also Walker v. Cox, No. 15-cv-686-jdp, 2017 WL 5136159, at *7 (W.D. Wis. Nov. 6, 2017) (finding same with respect to distribution of comfort items in cells). Plaintiff correctly points out that Chief Judge Peterson has recognized that "not . . . every application of the [shoe approval] policy will necessarily be constitutionally acceptable," and "[g]iving non-medical staffers influence in the decision-making process and divesting doctors of the final call on some of these requests could lead to a scenario where a doctor's recommendation for medically necessary care is countermanded by someone without the medical expertise to do so." Fields, 2018 WL 5995487, at *8. However, plaintiff has not

presented any evidence from which a reasonable jury could conclude that this happened in his case. Id. (finding same).

Neither side presented evidence about who was on the special needs committee that made the decision about plaintiff's shoes or what was discussed at the meeting. However, the undisputed facts show that the committee determined that the Nike or New Balance shoes recommended by the podiatrist were not "medically necessary" because the shoes provided by the institution met plaintiff's needs and would accommodate his orthotics. Under some circumstances, "[a] jury can infer conscious disregard of a risk from a defendant's decision to ignore instructions from a specialist," Wilson v. Adams, 901 F.3d 816, 822 (7th Cir. 2018) (citation omitted), such as "[f]ailing to provide care for a non-medical reason." Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018). However, this does not mean that prison officials always must follow a recommendation from a specialist. Wilson, 901 F.3d at 822. In this instance, even though plaintiff's podiatrist recommended shoes from outside vendors on three different occasions, the undisputed facts show that the committee provided a medical reason for not following the recommendations. Lloyd v. Moats, 721 F. App'x 490, 495 (7th Cir. 2017) ("The fact that [a prison doctor] disagreed with the podiatrist's recommendation for special shoes is not material here because the shoes were not prescribed, only recommended pending 'prison medical department' approval.").

In response to defendants' proposed findings of fact, plaintiff cites what appears to be an August 18, 2017 memorandum from Deputy Warden Ruck to all staff and inmates at Columbia, in which Ruck states that the special needs committee will accept requests

regarding shoes only upon a doctor's order, will not approve shoe requests "outside of the property policy regarding property allowance of $75 nor from an outside vendor," will not approve personal shoes and will provide inmates Apex shoes if medically necessary. Dkt. #36-1 at 31. Although the memorandum seems to instruct the special needs committee how to handle requests for shoes from outside vendors, it is not relevant to plaintiff's claims. The memorandum was not issued until after the special needs committee made its decision with respect to plaintiff's shoes on August 11, 2017.

In addition, plaintiff has failed to present sufficient evidence that either his Apex shoes, or the Nike shoes that he received on January 11, June 23 and August 30, 2017, did not meet his particular medical needs. Plaintiff makes conclusory arguments that all of the Apex and Nike shoes he received were inadequate or not high quality. However, he has failed to propose any facts about the Nike shoes. In support of his general contention that the Apex shoes were not well-made, plaintiff cites the declaration of Oscar McMillian, dkt. #37, another inmate who avers that his Apex tennis shoes were defective because "panels" glued to the rubber sole of the shoes became loose and separated from the shoe. A reasonable jury could not conclude from this evidence alone that the Apex shoes issued to plaintiff would not accommodate his insoles or otherwise meet the medical needs identified by his podiatrist.

Accordingly, defendants Schueler and Gohde are entitled to summary judgment as to plaintiff's individual and official capacity claims that the approval policy for outside shoes

17

at Columbia was unconstitutionally applied in his case or that defendants had any role in upholding or applying an unconstitutional policy regarding the approval of plaintiff's shoes.

C. State Law Negligence

To bring a claim of negligence against a state employee, a plaintiff must comply with Wisconsin's notice of claim statute, Wis. Stat. § 893.82, by notifying the attorney general about his state law claims. Specifically, § 893.82(3) requires a claimant in a civil action to serve the attorney general written notice of the circumstances of his claim by certified mail within 120 days of the event causing the injury, including "the name of the state officer, employee or agent involved." Strict compliance with the statute is a jurisdictional requirement for a state law claim against a state employee. Sorenson v. Batchelder, 2016 WI 34, ¶ 30, 368 Wis. 2d 140, 154, 885 N.W.2d 362, 368 (citing Wis. Stat. § 893.82(2m)); Ibrahim v. Samore, 118 Wis. 2d 720, 726, 348 N.W.2d 554, 558 (1984). See also Weinberger v. Wisconsin, 105 F.3d 1182, 1188 (7th Cir. 1997) ("Section 893.82 is jurisdictional and strict compliance is required."). Because it is undisputed that plaintiff did not name defendant Schueler in his notice of claim, plaintiff's state law negligence claim against Schueler must be dismissed for plaintiff's failure to comply with the notice of claim requirements under § 893.82.

Defendants have not moved for summary judgment as to plaintiff's negligence claims against defendants Anderson and Gohde, but they ask that I not exercise supplemental jurisdiction over those claims if I dismiss all of plaintiff's federal claims. The general rule is

18

that federal courts should relinquish jurisdiction over state law claims if all federal claims are resolved before trial. 28 U.S.C. § 1367(c)(3); Burritt v. Ditlefsen, 807 F.3d 239, 252 (7th Cir. 2015). In this instance, I will decline to exercise supplemental jurisdiction over plaintiff's claims against Anderson and Gohde because I am granting summary judgment to defendants on all of the federal claims. Plaintiff may refile these claims in state court, subject to the applicable Wisconsin statute of limitations.

ORDER

IT IS ORDERED that

1. Plaintiff James Washington's motion to strike, dkt. #42, is DENIED.

2. The motion for summary judgment filed by defendants Trisha Anderson, Renee Schueler and Jamie Gohde, dkt. #22, is GRANTED with respect to plaintiff's federal claims and his state law negligence claim against defendant Schueler.

3. Plaintiff state law negligence claims against defendants Anderson and Gohde are DISMISSED without prejudice under 28 U.S.C. § 1367(c)(3).

4. The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 10th day of September, 2019.

BY THE COURT:

/s/
_____
BARBARA B. CRABB
District Judge